IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA SUIDE, | ) |
| | ) |
| Plaintiff, | ) 08 C 2967 |
| | ) |
| v. | ) |
| | ) Hon. Charles R. Norgle |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court are the parties' Cross Motions for Summary Judgment. For the following reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied. The decision of the Commissioner is affirmed.

### I. BACKGROUND

**A. Facts**

Plaintiff Barbara Suide ("Suide") was born on January 12, 1966, and has an eleventh-grade education. During the time period relevant to this case, Suide lived on the north side of Chicago, Illinois with two of her children. One of these children, Suide's twenty-year old son, suffers from what Suide calls a "schitzo-active disorder," and receives disability payments.

Suide suffers from a myriad of physical conditions, which, she asserts, make it impossible for her to sustain gainful employment. In June 2001, suffering from pain, numbness and tingling in her right wrist and elbow, Suide underwent carpal tunnel release surgery. Medical records

1

indicate that by July 2001, she had regained good grip strength and that the numbness and tingling had ceased. Physical therapy helped her regain strength and functioning in her hand and fingers. In September 2003, Suide reported additional pain and stiffness in her right thumb. Doctors diagnosed her with stenosing tenosynovitis (chronic inflammation) of the flexor tendon sheath of the right thumb. She underwent surgery to "release" the right trigger finger and thumb and later had surgery to remove a cyst on her right index finger. Suide has also been diagnosed and treated for osteoarthritis in her knees, incontinence, depression, and asthma. In addition, Suide is obese, weighing 186 pounds at a height of 4'9".[1]

On April 9, 2004 a State Agency medical consultant, Dr. B. Rock Oh, M.D., examined Suide and completed a Physical Residual Functional Capacity Assessment.[2] This Assessment revealed that: Suide suffered from right thumb decompression and asthma; Suide could lift fifty pounds occasionally and twenty-five pounds frequently; that Suide could stand, walk, and/or sit for six hours in an eight hour workday; Suide had no postural limitations; and Suide had limited gross and fine manipulative abilities in both hands.

Suide suffered a stroke in December 2006, with accompanying symptoms of acute severe face droop, left side motor weakness, left foot drop, and slurred speech. She underwent physical therapy between February and May 2007 to address decreased left leg strength, balance and coordination difficulties, and right knee pain. At some point, she also began to experience migraine headaches possibly related to stress.

---

[1] Suide's Body Mass Index is 40.2, which is considered obese according to National Institute of Health guidelines. http://www.nhlbisupport.com/bmi/.

[2] It is not clear from the record which state agency employs Dr. Oh. Both parties and the ALJ simply refer to Dr. Oh as a "State Agency" physician.

Dr. Liana Palacci, D.O., examined Suide in March 2007, at the request of the Social Security Administration ("SSA").³ Dr. Palacci's examination revealed that Suide: was obese; had normal range of motion in her shoulder, elbows, wrists, and fingers, with some reduction of range of motion in her back; had normal range of motion and no swelling in her knees; had left leg weakness; was only able to walk ten feet unassisted; could walk fifty feet with a cane; could perform a heel-toe stand; was able to speak clearly and carry on a normal conversation; denied left arm weakness; and wore a left ankle brace due to foot drop.

In December 2007, Dr. Peter Orris, M.D., who had treated Suide for a month following her stroke, completed a Physical Capabilities Evaluation of Suide. This Evaluation indicated that Suide could: sit for four hours, stand for two hours, and walk for one hour per eight hour work day; lift up to ten pounds occasionally; use her right hand only for repetitive work; and occasionally bend, squat, crawl, climb, or reach. The Evaluation also indicated that Suide could not perform work activities involving unprotected heights or machinery. Dr. Orris concluded that Suide could not perform a standard forty-hour per week full time job, and that her condition would not improve.

**B. Procedural History**

Suide applied for disability insurance benefits and supplemental insurance income on December 19, 2003, alleging disability beginning on October 13, 2000. The SSA denied her claim initially and on reconsideration. The SSA's Explanation of Determination, dated April 20, 2004, reads in part:

---

³ D.O.s, or Doctors of Osteopathic Medicine, are fully qualified physicians licensed to prescribe medicine and perform surgery. D.O.s receive extensive training in diagnosing and treating conditions of the musculoskeletal system. http://www.osteopathic.org/.

> You said that you became disabled on 10/13/00 because of: carpal tunnel syndrome in right hand, inflammation in the thumb, [and] arthritis. The medical evidence in the file shows that your condition does cause some restrictions in your ability to function. . . We have determined that your condition does not keep you from working. We considered the medical and other information, your age, education, training and work experience in determining how your condition affects your ability to work. If your condition gets worse and keeps you from working, write, call or visit any social security office about filing another application.

Admin. R., at 85.

Suide requested and was granted a hearing before an Administrative Law Judge ("ALJ"), but failed to appear at the scheduled hearing on October 5, 2006. The ALJ therefore dismissed her claim. The Appeals Council, however, granted Suide another hearing. Suide again failed to attend. Finally, on December 11, 2007, after her stroke, Suide appeared with counsel and testified before the ALJ. A Vocational Expert ("VE") also testified at the hearing. On February 11, 2008, the ALJ issued a written Decision in which she summarized the medical evidence in Suide's case and determined that Suide was not disabled. In making this determination, the ALJ found: (1) that Suide had five severe impairments: bilateral carpal tunnel release surgery; right thumb tendon release surgery; mild stroke; migraine headaches; and obesity; (2) that none of these impairments, however, individually or in combination, met the SSA's standards for a listed impairment; (3) that Suide had the Residual Functional Capacity ("RFC") to perform light or sedentary work; (4) that Suide could lift or carry 20 pounds occasionally and 10 pounds frequently, push or pull 20 pounds occasionally and 10 pounds frequently, occasionally climb ramps or stairs, and occasionally stoop, kneel, crouch, or crawl; (5) that Suide could not, however, climb ladders or scaffolds, balance on unstable surfaces, or work around hazardous equipment or at unprotected heights; (6) and that there are significant numbers of jobs in the

national economy that Suide could perform given her conditions. ALJ Decision, at 3-10. The ALJ's Decision that Suide was not disabled became the final decision of the Commissioner when the Appeals Council denied review on April 18, 2008. See 20 C.F.R. § 416.1481; Schmidt v. Astrue, 496 F.3d 833, 841 (7th Cir. 2007).

On June 10, 2008, Suide through her attorney filed the instant Complaint in the Northern District of Illinois seeking judicial review of the Commissioner's decision. The Commissioner filed an Answer, along with a copy of the Administrative Record, on September 26, 2008. On December 12, 2008, Suide filed a Motion for Summary Judgment asking the Court to reverse and remand the case to the SSA. The Commissioner filed a Cross-Motion for Summary Judgment on January 9, 2009 requesting that the Court affirm his decision. The Motions are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

To make a successful claim for disability benefits under the Social Security Act, an individual must demonstrate that he or she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months.'" Windus v. Barnhart, 345 F. Supp. 2d 928, 930 (E.D. Wis. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)). Social Security regulations prescribe a five-step test to determine whether an individual is disabled:

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to

5

perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer, at any point other than step (3), stops inquiry and leads to a determination that the claimant is not disabled.

Taylor v. Schweiker, 739 F.2d 1240, 1241 n.1 (7th Cir. 1984); see also Craft v. Astrue, 539 F.3d 668, 673-74 (7th Cir. 2008); 20 C.F.R. § 404.1520.

Under this five-step test, a claimant will be found presumptively disabled if he or she "makes the necessary showing at steps 1-3." Windus, 345 F. Supp. 2d at 930. If the claimant cannot show that he or she is presumptively disabled, "the ALJ must consider whether the claimant possesses the residual functional capacity ("RFC") to perform her past work." Id. If the claimant does not have the necessary RFC to return to his or her prior position, "the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy." Id. The Commissioner can satisfy this burden by either presenting the testimony of a vocational expert, or "through the use of the 'Medical-Vocational Guidelines' . . . a chart that classifies a person as disabled or not disabled based on her exertional ability, age, education, and work experience." Id. at 930-31 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).

The Court will not disturb the Commissioner's finding as to a claimant's disability as long as that decision "is supported by substantial evidence and is free from legal error." Steele, 290 F.3d at 940; see also Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002). "To determine if substantial evidence exists, the court reviews the record as a whole, but is not allowed to substitute its

judgment for the ALJ's by 'reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000) (quoting Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). The District Court's review is therefore limited to determining whether the Commissioner's finding of not disabled is supported by substantial evidence. See Lee v. Sullivan, 988 F.2d 789, 792 (7th Cir. 1993).

## B. The Commissioner's Determination that Suide is Not Disabled is Supported by Substantial Evidence

In support of her Decision that Suide was not disabled, the ALJ summarized the medical evidence. The ALJ first set forth Suide's difficulties with right arm carpal tunnel syndrome and the resulting surgery. The record evidence recounted by the ALJ indicated that following her surgery, Suide regained good grip strength with no numbness or tingling in her fingers. In addition, Suide reported unusual carpal tunnel symptoms in her left arm, but a wrist brace alleviated her discomfort. The ALJ also noted Suide's right thumb surgery, and the removal of the cyst on Suide's right index finger. The evidence showed that Suide ultimately regained normal sensation, full range of motion, and normal dexterity in her hands. However, Suide was left with slightly reduced grip strength.

The ALJ then discussed Suide's knee pain. In January 2003, x-rays of Suide's knees revealed mild bilateral osteoarthritis. The medical evidence showed that, prior to her stroke, she did not have a significant impairment in her ability to walk. After her stroke, however, Suide required a cane to walk less than fifty feet, and she walked with an antalgic (pain-avoiding) and wide gait. By August 2007, following a course of physical therapy, the evidence showed that Suide's left-side weakness was improving (although she was experiencing some reduced strength

7

in her left leg), and she had regained full range of motion. Suide was also diagnosed with rheumatoid arthritis in multiple joints, which doctors treated with over-the-counter Glucosamine. Suide continued to complain of joint pain, but doctors could detect no chronic inflammation, and Suide retained full range of motion.

Suide also complained of recurrent migraine headaches, which doctors attributed to stress. The medical evidence indicated that Suide's headaches caused right arm and leg tremors, weakness, and sensitivity to light, but that the headaches did not occur with enough frequency or severity to interfere with employment activities. The ALJ also noted that Suide's complaints regarding the intensity of her combined conditions were not fully consistent with the record evidence, and that one of her physicians had opined that Suide was exaggerating the severity of her conditions.

Finally, the ALJ indicated that she could not give full weight to either Dr. Orris' or Dr. Oh's opinions. Recall that Dr. Orris indicated that Suide was essentially not able to work, while Dr. Oh found that Suide could perform medium intensity work. Dr. Orris, the ALJ explained, had only treated Suide for a month, and the record did not indicate that the frequency of her visits during that month was enough for Dr. Orris to establish a significant treatment relationship with her. Dr. Oh's opinion, the ALJ found, was not particularly helpful since Dr. Oh formed this opinion prior to Suide's stroke, and he had apparently not examined Suide since that time. The ALJ therefore determined that, consistent with Dr. Palacci's examination of Suide, Suide could perform light or sedentary work not involving standing or walking for long periods of time or repetitive pushing or pulling.

The ALJ then explained that she posed hypothetical questions to the VE during the hearing regarding whether jobs existed in the national economy for an individual with Suide's age, education, work experience, and RFC. The VE indicated that there were thousands of jobs in the national economy for someone with Suide's characteristics and RFC.

Taking all of the above evidence into account, the ALJ determined that Suide had not been under a disability from the time of her alleged onset date until the date of the Decision. After carefully examining the record in this case, the Court determines that the ALJ's decision is supported by substantial evidence. The ALJ thoroughly considered the medical evidence in this case, including the results of numerous examinations by various doctors. The ALJ then reasonably determined that two of these doctors' opinions, Dr. Oh's and Dr. Orris' should not be given substantial weight. The District Court cannot and will not second guess the ALJ's decision regarding how much weight to give the opinions of these doctors. See Cannon, 213 F.3d at 974 (district courts may not reweigh evidence in SSA appeals).

Moreover, Plaintiff's assertion that the ALJ improperly constructed a middle-ground RFC between the extreme views of Dr. Oh and Dr. Owens is misplaced. See Bailey v. Barnhart, 473 F. Supp. 2d 822, 841-42 (N.D. Ill. 2006) ("In constructing her own physical RFC determination, the ALJ improperly played doctor, and violated the admonition that an ALJ must refrain from making her own independent medical findings.") (internal quotation marks and citation omitted). The ALJ, although she did not expressly state this in her Decision, apparently relied on the examination of Dr. Palacci in forming her RFC. Plaintiff has not shown enough to support the argument that the ALJ simply created, on her own, an improper compromise RFC between two extreme views she rejected. Instead, it is clear to the Court that the ALJ weighed the medical

evidence in this case, and arrived at a RFC in line with Dr. Palacci's opinion regarding Suide's ability to work. See Admin. R., at 332-335 (Dr. Palacci's report indicated that Suide exhibited normal range of motion in most joints, that Suide could stand and ambulate short distances unassisted, and that Suide reported no left arm weakness but some left leg weakness). The ALJ was presented with differing accounts of Suide's conditions, and, after careful consideration, chose to discount the reports of Drs. Orris and Oh. "Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). In other words, it is for the ALJ, not this court, to make determinations as to which doctor(s) to believe. Id. (citing Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996)). This court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." Id. (citing Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003)).

In summary, the ALJ in her Decision: (1) examined and explained the medical evidence, including the reports of various physicians; (2) connected the medical evidence she found most compelling to Suide's RFC; (3) recounted the VE's assertions regarding the sorts of work Suide could perform; and then (4) concluded that Suide was not disabled. The Court finds that in undertaking this careful, step-by-step process, the ALJ has provided an "accurate and logical bridge" between the evidence in this case and her determination that Suide is not disabled. See Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008). The Court therefore determines that the ALJ's Decision that Suide is not disabled is supported by substantial evidence. See Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied, and the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 6, 2009