# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA SUIDE, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 2967 |
| | ) | |
| v. | ) | Hon. Charles R. Norgle |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is the Plaintiff's Motion for Attorney's Fees pursuant to the Equal Access to Justice Act ( "EAJA"), 28 U.S.C. § 2412. For the following reasons, the Motion is denied.

### I. BACKGROUND

Plaintiff Barbara Suide ("Suide") was born on January 12, 1996 and has worked as a mail clerk and K-Mart cashier. Suide applied for disability insurance benefits and supplemental security income in December 2003, alleging that she became disabled after October 2000 due to bilateral carpal tunnel syndrome, arthritis and "trigger finger."

In June 2001, suffering from pain, numbness and tingling in her right wrist and elbow, Suide underwent carpal tunnel release surgery. Medical records indicate that by July 2001, physical therapy helped her regain strength and functioning in her hand and fingers. However, in 2003 Suide reported additional pain and stiffness in her right thumb. She was diagnosed with chronic

inflammation of the flexor tendon sheath of the right thumb. She submitted evidence that she underwent a surgery to release the right trigger finger and thumb, and later she had another surgery to remove a cyst on her right index finger.

In April 2004, a state-agency consultant, Dr. B. Rock Oh, M.D. assessed her residual functional capacity. The doctor concluded that Suide suffered from right thumb decompression and asthma; she could lift 50 pounds occasionally and 25 frequently; she could stand, walk, and/or sit for six hours in an eight hour workday; she had no postural limitations; and she had limited gross and fine manipulative abilities in both hands.

Suide suffered a stroke in December 2006 and as a result the doctors noted severe face drop, left-side motor weakness and slurred speech. Suide did not return to work and began physical therapy in February 2007. One therapist concluded that Suide was not at risk of falling due to her pain but was walking with a significant limp, and suffered from decreased balance and coordination.

In March 2007, Dr. Linda Palacci, a second state-agency consultant, examined Suide. Dr. Palacci's evaluation revealed that: Suide had normal range of motion in her knees, ankles, hips, shoulders, elbows, wrists, and fingers, and that her grip strength was good in both hands; Suide was able to walk ten feet unassisted; she could walk 50 feet with a cane; and she could perform a heel-toe stand.

In April 2007, Suide was admitted to the emergency room after she suffered a minor stoke. Then in May 2007, her condition was exacerbated by a fall that injured her right hip. In December 2007, Dr. Peter Orris, M.D. examined Suide. Suide asserts that Dr. Orris had been her treating physician for a year. However the record contains just a one month span of treatment. Dr. Orris completed Suide's Physical Capabilities Evaluation. The doctor concluded

that Suide could: sit for four hours, stand for two hours, and walk for one hour per eight hour work day; lift ten pounds occasionally; and could occasionally bend, squat, crawl, climb or reach. Dr. Orris concluded that Suide could not perform a standard forty-hour per week full time job, and her condition would not improve.

Suide applied for disability insurance benefits and supplemental insurance income on December 19, 2003, alleging disability beginning October 13, 2000. The Social Security Administration denied her claim initially and on reconsideration. Suide requested and was granted a hearing before an Administrative Law Judge ("ALJ") but failed to appear on October 5, 2006. The ALJ dismissed her claim. The Appeals Council granted Suide another hearing. On December 2007 she appeared and testified before the ALJ.

On February 11, 2008, the ALJ issued a written Decision concluding that Suide was impaired by carpal tunnel, trigger finger, stroke, migraines, and obesity but was still able to perform some light or sedentary work. On May 6, 2009, this Court affirmed the ALJ's findings. Suide v. Astrue, No. 08-2967, 2009 WL 1270205 (N.D.Ill. May 6, 2009). Suide filed a Notice of Appeal to the Seventh Circuit. On April 16, 2010 the Seventh Circuit rendered a decision where it affirmed in part and remanded the case to the Commissioner for further proceedings to determine whether Suide qualified for benefits after her stroke in December 2006. Suide v. Astrue, 371 Fed. Appx. 684 (7th Cir. 2010). The Seventh Circuit concluded that although substantial evidence supported the ALJ's determination that Suide was not disabled before her first stroke, "the record is insufficient to sustain the ALJ's findings about her residual functional capacity determination after her strokes." Suide v. Astrue, 371 Fed. Appx. at 685.

On June 21, 2010, Suide petitioned this Court for an award of $ 27,985.37 in attorney's fees under the EAJA. The Commissioner challenged Suide's entitlement to fees, arguing that

because its position at the administrative and judicial level was "substantial justified," Suide is not entitled to fees. .

## II. DISCUSSION

### A. Standard of Decision

The EAJA is one of the several fee-shifting statutes in the United States Code. The EAJA provides that a court may "award to a prevailing party other than the United States fees and other expenses in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Eligibility for fees is not automatic but is established upon meeting the following conditions: 1) the claimant is a "prevailing party"; 2) the government's position was not substantially justified; 3) no "special circumstances make an award unjust"; and 4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. Commissioner, INS v. Jean, 496 U.S. 154, 158 (1990). There is no dispute between the parties that section 2412(d)(1)(A) applies to this case, that the fee application was filed timely, or that Suide is the prevailing party for purposes of the EAJA. Also, no special circumstances are alleged. The only question before the Court is therefore whether the Commissioner's position was substantially justified in denying Suide social security benefits.

Under the EAJA, the government bears the burden of proving that its position was substantially justified. Cummings v. Sullivan, 950 F.2d 492, 495 (7th Cir.1991). The "position of the United States includes the underlying agency conduct as well as the agency's litigation

position." 28 U.S.C. § 2412(d)(2)(D). Thus, in making its determination, it is appropriate for the court to consider the government's litigating position as well as its "pre-litigation conduct," meaning the action or inaction that gave rise to the litigation. Cummings, 950 F. 2d at 496.

The EAJA does not define the term "substantially justified." However, the Supreme Court has held that the position of the United States is substantially justified if it is "justified in substance or in the main - that is justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). The outcome of a case is not conclusive evidence of the justification for the government's position. See id. at 569. The Supreme Court stated: "the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." Id.

To meet its burden of proof, the Commissioner must establish that his decision was grounded in: "1) a reasonable basis of truth for the facts alleged; 2) a reasonable basis in law for the theory propounded; and 3) a reasonable connection between the facts alleged and the legal theory advanced." U.S. v. Hallmark, 200 F.3d 1076, 1080 (7th Cir. 2000), Golembieski v. Social Sec. Admin., 382 F.3d.721, 723-724 (7th Cir. 2004). This inquiry requires the court to re-evaluate the government's position from the standpoint not of correctness or validity, but of substantial justification and reasonableness. See Pierce v. Underwood, 487 U.S. at 569.

**B. The ALJ's position through the entire litigation was substantially justified**

Suide argues that the ALJ's position lacked substantial justification based on "language used by the Court of Appeals in reversing the ALJ's decision." U.S. v. Paisley, 957 F.2d 1162, at 1167 (4th Cir. 1992). However, the Paisley court specifically stated that "merits decisions in a litigation, whether intermediate or final, cannot standing alone determine the substantial justification standard." Id. The decisions on the merits are "powerful indicators of the strength,

hence reasonableness, and must be taken into account by the district court in deciding whether the Government's position, though ultimately rejected on the merits, was substantially justified." Id. In the case at bar, the Court of Appeals reversed the ALJ's decision only in part holding that ALJ's denial of benefits was "reasonable and well supported for her condition up to the time of the first stroke" and remanded the case for further proceedings to determine whether Suide qualified for benefits after December 2006. This Court affirmed the ALJ's findings and the Court of Appeals agreed with the ALJ's position on a substantial amount of the period in question, a period of six years. Suide v. Astrue, 371 Fed. Appx. at 690. In evaluating the government's position, the court must assess the government's conduct as a whole and should not engage in "argument counting." See Steward v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009). Suide and the ALJ agree that the government's conduct was substantially justified up until December 2006, when Suide suffered her first stroke. Suide v. Astrue, 371 Fed. Appx. at 690. The remaining period is to be tested as to whether it satisfies the standard of substantial justification.

The "substantially justified" standard does not require that a position be "justified to a high degree;" instead, this standard is met when there is a "genuine dispute," or if reasonable people could differ as to the appropriateness of the government's position. Pierce, 487 U.S. at 565. In other words, the closeness of the question is in itself evidence of substantial justification. Cummings, 950 F.2d at 498. In determining if the ALJ's actions are substantially justified, the requirement that the ALJ articulate his consideration of the evidence is deliberately flexible. See Brown v. Bowen, 847 F.2d 342, 346 (7th Cir. 1988) ("It is enough if the ALJ indicates the path of decision. . . . The administrative tribunal need not spell out every step in the reasoning, if it provides enough of the steps that the full course may be discerned."); Burnett v. Bowen, 830

6

F.2d 731, 735 (7th Cir. 1987) ("An ALJ is not required to evaluate every piece of testimony and submitted evidence; however, he must articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented....").

After carefully re-examining the record based on a standard of reasonableness, the Court determines that the government's position in the entire litigation is substantially justified. In denying benefits to Suide after her stroke, the ALJ proceeded through the sequential evaluation process. The ALJ thoroughly considered the medical evidence in this case, including the results of several doctors' examinations. The ALJ also recounted Dr. Palacci's examination in forming her RFC. The Court of Appeals noted that Dr. Palacci's evaluation could not be used to support specific limitations included in Suide's RFC because Dr. Palacci's evaluation did not include a "functional assessment of Suide's abilities." Suide v. Astrue, 371 Fed. Appx. at 690. The Court of Appeals stated that the ALJ "did not discuss the weight that was given to any of these reports." However, even if the ALJ was incorrect on one point, this does not mean the government lacked justification for its litigation position during the entirety of this action. Jackson v. Chater, 94 F.3d 274, 279 (7th Cir. 1996). Even if the ALJ's reliance on Dr. Palacci's evaluation was misplaced, the ALJ's overall position during the entire litigation was supported by evidence contained in the record that meets the standard of reasonableness.

The ALJ had reasonable basis for concluding that Suide was disabled. The ALJ followed all the steps required in deciding the issue of Suide's disability: he examined and explained medical evidence, including reports of various physicians and therapists. Based on their assessments, the ALJ concluded that Suide could perform light or sedentary work not involving standing or walking for long periods of time or repetitive pushing or pulling. The ALJ correctly choose to discount Dr. Orris's reports when, from the record, it appeared that he was treating Suide for just

one month. The ALJ also recounted the vocational expert's assertions who testified that someone in Suide's age, work history and impairments could perform the light work of a clerk, an information clerk or an assembly position and similar sedentary position. Therefore, the government has met its burden of proof because the ALJ's conclusions were based on a substantial amount of evidence that indicated that Suide was impaired, but not disabled.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the government's position in the underlying litigation was substantially justified. The Plaintiff's Motion for Attorney's Fees under the EAJA is therefore denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: February 4, 2010